STITT v MAHANEY

OPINION OF THE COURT

1. NEGLIGENCE—DIRECTED VERDICTS—LIABILITY—DAMAGES—MEDI-
   CAL MALPRACTICE.

   A request for a directed verdict on the issue of liability while
   leaving the issue of damages to the jurors is a request for a
   specialized directed verdict which does not comport with a
   cause of action for medical malpractice, a tort claim in negli-
   gence.

2. NEGLIGENCE—MEDICAL MALPRACTICE—PROXIMATE CAUSE—DAM-
   AGES.

   A plaintiff must show that the negligence of a physician was a
   proximate cause of the injury for which damages are sought
   before he can recover for that negligence.

3. NEGLIGENCE—ELEMENTS—DUTY—BREACH—PROXIMATE CAUSE—
   DAMAGES.

   The elements of a cause of action for damages arising from a
   tortious injury to a person are: (1) the existence of a legal duty
   by defendant toward plaintiff; (2) the breach of that duty; (3) a
   proximate causal relationship between the breach of duty and
   an injury to the plaintiff; and (4) the plaintiff must have
   suffered damages.

4. NEGLIGENCE—MATTERS OF LAW—EVIDENCE—REASONABLE MEN—
   PROXIMATE CAUSE.

   Liability may not be found in a tort action as a matter of law

REFERENCES FOR POINTS IN HEADNOTES
[1, 12] 75 Am Jur 2d, Trial § 489 et seq.
[2–4] 61 Am Jur 2d, Physicians, Surgeons and Other Healers § 188.
[4, 7, 10, 11] 61 Am Jur 2d, Physicians, Surgeons and Other Healers
    § 212 et seq.
[5] 47 Am Jur 2d, Jury § 260.
[6] 81 Am Jur 2d, Witnesses § 69 et seq.
[8, 13] 29 Am Jur 2d, Evidence § 251 et seq.
[9] 40 Am Jur 2d, Hospitals and Asylums §§ 14, 20 et seq.

where in light of the evidence presented reasonable men could differ as to the question of proximate cause.

5. JURY—PEREMPTORY CHALLENGES—MULTIPLE PARTIES—DIVERSITY OF INTERESTS—SEPARATE PARTIES.

A judge may rationally classify multiple parties to an action based on diversity of interests and grant the prescribed number of peremptory challenges to each separate and potentially antagonistic party.

6. WITNESSES—IMPEACHMENT—PLEADINGS—RELEVANCE TO CREDIBILITY—MISINTERPRETATION—COMPETENCE OF WITNESS.

A trial judge properly excluded an attempt to impeach a defendant doctor on cross-examination by using a cross-complaint which was filed in his behalf in the action, but later withdrawn, where the pleading had no relevance to the doctor's credibility, the examination could have been misinterpreted by the jury as substantive evidence of negligence, and the doctor was without competence to testify as to the matters on which cross-examination was sought.

7. NEGLIGENCE—MEDICAL MALPRACTICE—RELEASE—MULTIPLE DEFENDANTS—INSTRUCTIONS TO JURY—DAMAGES.

A trial judge may instruct a jury in a negligence action that any consideration received by plaintiff for a release of the party causing an original injury should be deducted from the amount of damages resulting from subsequent medical malpractice.

8. WITNESSES—CROSS-EXAMINATION—MENTAL ANXIETY—MARIJUANA—CAUSAL CONNECTION—PREJUDICE.

A trial judge may not grant permission to cross-examine a plaintiff in a negligence action concerning his experimental use of marijuana, to counter the plaintiff's allegation of substantial damages for mental anxiety caused by the negligence, where no evidence of a causal connection between use of marijuana and psychological difficulties is presented, but such error is not reversible where there was not sufficient prejudice shown to require a retrial.

DISSENT BY S. S. HUGHES, J.

9. NEGLIGENCE—MATTERS OF LAW—HOSPITALS—BREACH OF DUTY—JURY—PROXIMATE CAUSE—DAMAGES.

*A hospital may be held negligent as a matter of law for a blatant and negligent breach of its duty of care to a plaintiff patient and the jury should be so instructed; following such instruction*

the jury should be allowed to determine the matters of proximate cause and damages.

10. Negligence—Evidence—Release—Multiple Defendants—Intent—Consideration.

*A release given by a plaintiff to one of several persons who allegedly caused injury to the plaintiff should not have been admitted in the negligence action against the remaining tortfeasors where the release was intended to apply only to the party released, neither the release nor any witness put forth any evidence in the trial that some or all of the remaining defendants were intended to be released from liability, and none of the remaining defendants gave any consideration to the plaintiff to secure a release from liability.*

11. Damages—Negligence—Settlement—Multiple Defendants—Determination of Liability—Separate Injuries—Intent.

*Settlement money obtained from one of several alleged tortfeasors is irrelevant to a determination of liability or the amount of damages owed by the remaining defendants where the injuries caused by the party released were separate from the injuries caused by those remaining and the settlement was intended to cover only the injuries caused by the released party.*

12. Appeal and Error—Directed Verdicts—No Cause of Action—Record—Evidence—Jury.

*It is error to grant a directed verdict of no cause of action in favor of a defendant doctor where the record shows sufficient evidence of liability to present a jury question.*

13. Appeal and Error—Prejudice—Witnesses—Cross-Examination—Marijuana—Relevant Facts—Reversible Error—Other Errors.

*An error committed by a trial judge in allowing a plaintiff to be cross-examined concerning his experimental use of marijuana where that fact was not proved relevant is not harmless error where there were other serious errors committed during the trial.*

Appeal from Ottawa, George V. Boucher, J. Submitted June 10, 1976, at Grand Rapids. (Docket No. 22190.) Decided November 8, 1976. Leave to appeal applied for.

Complaint by Daniel J. Stitt against Robert C.

Mahaney, M. D., Donald E. DeWitt, M. D., Owen J. Gesink, M. D., and the City of Holland, seeking damages for medical malpractice. Judgment for defendants. Plaintiff appeals. Affirmed.

*Newman & Mackay,* for plaintiff.

*Hillman, Baxter & Hammond,* for defendant Mahaney.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for defendant DeWitt.

*Norris & Keyser, P. C.,* for defendant Gesink.

*Kitch & Suhrheinrich, P. C.* (by *Gregory Drutchas),* for the City of Holland.

Before: R. B. BURNS, P. J., and M. J. KELLY and S. S. HUGHES,* JJ.

R. B. BURNS, P. J. Plaintiff appeals from a jury verdict in favor of all defendants on his medical malpractice cause of action.

Plaintiff was seriously injured in a motorcycle-car crash and taken in critical condition and great pain to the emergency room at the defendant city's hospital. Defendant Dr. DeWitt, plaintiff's family physician, met him at the hospital and ordered numerous X-rays. Dr. DeWitt summoned defendant Dr. Mahaney, an orthopedic surgeon, who assumed care of the patient, reviewed the X-rays, and, pursuant thereto, ordered traction of the right leg in treatment of an apparent fracture of the right acetabulum (hip socket).

Unbeknownst to Dr. Mahaney, a hospital techni-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

cian had mislabeled an X-ray: plaintiff was actually suffering a fracture of his left hip. This error was discovered on the next day by defendant Dr. Gesink, a radiologist, who corrected the X-ray label and dictated a report for Drs. Mahaney and DeWitt with a copy for plaintiff's file. For some reason, Dr. Mahaney did not become aware of the error until his request for follow-up X-rays 11 days later. Traction remained for this period on the "wrong" leg.

Plaintiff's appeal alleges nine instances of reversible error. The one that causes the most difficulty is the assertion that the trial judge should have directed a verdict for plaintiff, particularly as against the defendant city, owner and operator of the hospital.

It is undisputed that the hospital employee mislabeled the X-ray, and that treatment would have been different otherwise. Despite defendants' various contentions that such "human" errors are inevitable, it is obvious that mislabeling an X-ray, a blatant breach of a hospital's duty of care to a patient, is an act of ordinary, "nonmedical" negligence. Accordingly, plaintiff's counsel asked at trial for a directed verdict on the "issue of liability", while leaving "the issue of damages to the Jurors".

Unfortunately, such a partial or specialized directed verdict does not comport with a cause of action for medical malpractice, a tort claim in negligence. As stated by the Supreme Court in *Morgan v Engles,* 372 Mich 514, 516; 127 NW2d 382, 383–384 (1964):

"It is obviously the law that in order to recover for the negligence of a physician, plaintiff must show that such negligence was *a proximate cause* of the injury for which damages are sought." (Emphasis added.)

The required elements for a cause of action "for damages arising out of tortious injury to a person" are listed in *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 150; 200 NW2d 70, 72 (1972):

"(1) The existence of a legal duty by defendant toward plaintiff.

"(2) The breach of such duty.

"(3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.

"(4) The plaintiff must have suffered damages."

There is significant expert testimony on the record that could have supported a conclusion by the jury that plaintiff's resultant hip condition was proximately caused by the accident rather than by the treatment. Defendants' independent expert, Dr. Greene, characterized the results of the treatment as "rather ideal"; the testimony of plaintiff's own expert, Dr. Badgley, indicates that the accident unaggravated by treatment could be the cause of the continuing difficulties. Reasonable men could differ as to the question of proximate cause, and we cannot therefore find liability as a matter of law. See *Siirila v Barrios,* 58 Mich App 721, 725; 228 NW2d 801 (1975). The trial judge properly denied a directed verdict in favor of plaintiff.

Plaintiff also contends that the trial judge's application of GCR 1963, 511.5 denied him equal protection of the law by granting each defendant three peremptory challenges (12 total) as against his total of three. The court rule enables the judge to make a rational classification based on diversity of interests, and the record clearly indicates that the defendants were separate, and potentially antagonistic, parties. Further, as there were no limi-

tations on the number of challenges for cause, plaintiff retained the reasonable opportunity to assure himself of the jury's impartiality. We do not find error in this issue.

Plaintiff next contends that he should have been allowed to cross-examine defendant Dr. Gesink as to a cross-complaint filed on his behalf but withdrawn prior to trial. The trial judge determined on the record that Dr. Gesink was without knowledge of this pleading prepared by his attorney, and denied plaintiff's request to cross-examine on this ground and on the ground of irrelevancy. While pleadings are admissible for impeachment purposes, it is obvious that the pretrial documentary fencing in this case has no relevance to the credibility of Dr. Gesink. Further, cross-examination of Dr. Gesink on this question would run a serious risk of impropriety by being misinterpreted by the jury as substantive evidence of negligence, and, in any case, Dr. Gesink (a radiologist) is admittedly without competence to testify as to any negligence of his codefendant orthopedist or family physician. The trial judge's ruling in exclusion of this testimony was not erroneous.

Plaintiff also asserts error in the admission into evidence of a release that he negotiated with the driver of the automobile that hit him, and error in the trial judge's instruction to the jury that the consideration received by plaintiff from the driver for the release should be deducted from the amount of any damages resulting from malpractice. These assertions are answered in the negative by, respectively, *Sobotta v Vogel,* 37 Mich App 59; 194 NW2d 564 (1971), and *Cooper v Christensen,* 29 Mich App 181; 185 NW2d 97 (1970).

Plaintiff argues error in the trial judge's permission of cross-examination as to his "experimental"

use of marijuana. Defendants counter that plaintiff's allegation of substantial damages for mental anxiety and psychiatric treatment renders such questioning relevant.

We tend to agree with plaintiff. This is scarcely a case such as *People v Talaga,* 37 Mich App 100; 194 NW2d 462 (1971), where heroin addiction was adjudged relevant and material on credibility. It is a plain fact that a significant percentage of college age people have "experimented" with marijuana. Further, defendants presented no evidence of a causal connection between use of marijuana and psychological difficulties. This questioning is specifically disapproved.

Nevertheless, we believe that, in the context of this record, the error was not sufficiently prejudicial so as to require a new trial under GCR 1963, 529.1.

Plaintiff's remaining allegations of error have been considered and determined to be without merit. The verdict of the jury is affirmed.

M. J. KELLY, J., concurred.

S. S. HUGHES, J. *(dissenting).* I dissent from the majority's opinion in this case. I feel that there is merit in at least four of plaintiff's allegations of error on appeal.

First, I must disagree with the conclusion that this blatant and negligent breach of the hospital's duty of care to plaintiff is somehow not actionable because of the formalistic requirements of a narrow conception of proximate cause. The trial judge should have instructed the jury that the hospital was negligent as a matter of law, and left to the jury the matter of proximate cause and damages.

I also disagree with the majority's conclusion as

to the admissibility of the release. Plaintiff argues that the release was intended to apply only to the owner and operator of the vehicle that struck him; plaintiff and his lawyer so testified. Neither the release nor any witness put forth any evidence that some or all of the defendants were to be released from liability for any injuries to plaintiff caused by the negligence of defendants. Further, no defendant gave any consideration to plaintiff to secure a release from liability. I conclude that the release should not have been admitted.

Similar problems derive from the trial judge's instruction to the jury concerning the release. One difficulty with holding that the "plaintiff/driver" settlement money should be deducted from any judgment is the implicit assumption that the jury will be able to determine and apportion the respective damage done to the plaintiff by the accident and by the resultant treatment. Another difficulty involves the overriding policy of encouraging settlement. There are many inducements to make settlements and there are many variables in assessing the dollar value of injuries. The plaintiff had many more injuries than just the hip injury about which the malpractice is claimed. If the defendants in this case are liable for negligence, they are liable only for the injuries caused by their own negligence and not those caused by the driver in the accident. The settlement covered *these* injuries, and it is irrelevant to any determination of the liability of defendants.

The law favors settlements. The trial judge's ruling in this case will discourage settlements. To the extent that *Sobotta v Vogel,* 37 Mich App 59; 194 NW2d 564 (1971), may be construed as contrary to this reasoning, I would decline to follow that ruling.

I further believe that the court erred in directing a verdict of no cause of action in favor of Dr. DeWitt. The record dictates that the question of his potential liability be determined by the jury. Dr. DeWitt ordered X-rays, including one of the actually injured left hip, and assisted Dr. Mahaney in tractioning the wrong leg in spite of the apparent indication of the left hip X-ray (exhibit 10).

It is almost unbelievable that with such a severely injured patient that Dr. Gesink would not immediately call or contact Drs. Mahaney and DeWitt upon discovery of the mislabeling, as opposed to merely correcting the X-rays and writing a report. It is also strange that these doctors, Mahaney and DeWitt, did not see the report in plaintiff's file and that they took so long to discover the left hip injury. The plaintiff was apparently suffering almost unbearable pain, and having great difficulty with his left leg.

I concur with the majority as to the error in the trial judge's permission of cross-examination as to plaintiff's "experimental" use of marijuana. In the context of the other errors committed at trial I do not believe that this questioning can be dismissed as harmless error under the court rule.

I find the conclusion to be inescapable that this plaintiff had too many elements militating against him to allow a fair trial. He was a motorcycle rider, a marijuana experimenter, and a settler of an accident case. The judgment should be reversed and remanded for a new trial.